DUPLICATE

Kirk A. Pasich CA SBN 94242
pasichk@dicksteinshapiro.com
Cassandra C. Shivers CA SBN 174164
shiversc@dicksteinshapiro.com
DICKSTEIN SHAPIRO LLP
2049 Century Park East, Suite 700
Los Angeles, CA 90067-3109
Telephone: (310) 772-8300
Facsimile: (310) 772-8301

Deborah K. Miller CA SBN 95527
deborah.miller@oracle.com
Jeffrey S. Ross  CA SBN 138172
jeff.ross@oracle.com
ORACLE USA, INC.
500 Oracle Parkway, 7th Floor
Redwood Shores, California 94065
Telephone:  (650) 506-5200
Facsimile:  (650) 506-7114

Attorneys for Plaintiff Oracle USA, Inc.

ORIGINAL
FILED

E-filing    MAR 26 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORACLE USA, INC., a Colorado Corporation,<br><br>      Plaintiffs,<br><br>vs.<br><br>HCC SPECIALTY INSURANCE COMPANY, an Oklahoma company,<br><br>      Defendant. | CASE NO. CV 09 1339 JCS<br><br>**COMPLAINT FOR BREACH OF CONTRACT, TORTIOUS BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, AND DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Oracle USA, Inc. ("Oracle") complains of defendant and alleges as follows:

## NATURE OF ACTION

1.      This is a lawsuit by Oracle against HCC Specialty Insurance Company ("HCC") because HCC has breached its duties to pay Oracle amounts owed under a

1

COMPLAINT

DICKSTEIN
SHAPIRO LLP

DOCSLA-39426

1  professional liability errors and omissions insurance policy. The HCC policy insured

2  Skywire Software, LLC ("Skywire"), which Oracle acquired in June 2008. Following

3  the Skywire acquisition, Oracle became Skywire's successor-in-interest, including as

4  to insurance coverage under the HCC policy. The errors and omissions policy from

5  HCC, which was obtained prior to Oracle's acquisition of Skywire, was done so for

6  the express purpose of insuring against losses from wrongful acts that might arise in

7  the course of Skywire's business of providing services relating to the development,

8  implementation, and use of software that it licensed to end user customers. HCC

9  knew and agreed to this, and collected substantial premiums for the policy that it

10  issued. However, when claims were timely brought that were insured under the

11  policy, HCC asserted that the policy does not cover Oracle's loss in connection with

12  the defense and settlement of a claim against Skywire. HCC took this position even

13  though it is contrary to the parties' express agreement and deprives Oracle of the

14  benefits due under the insurance policy.

## THE PARTIES

15

16      2.      Oracle is a Colorado corporation with its principal place of business in

17  Redwood Shores, California. Oracle is the world's leading provider of information

18  management software for commercial and government enterprises.

19      3.      Oracle is informed and believes, and on that basis alleges, that HCC is

20  domiciled in Oklahoma, with its principal place of business in Houston, Texas.

21      4.      Oracle is informed and believes, and on that basis alleges, that HCC is

22  part of HCC Insurance Holdings, Inc., which describes itself as "a leading

23  international specialty insurance group with a highly diversified mix of businesses and

24  offices across the United States and in Bermuda, Ireland, Spain and the United

25  Kingdom."

## JURISDICTION

26

27      5.      This Court has jurisdiction over this matter under 28 U.S.C. § 1332(a)

28

DICKSTEIN
SHAPIRO LLP

COMPLAINT

DOCSLA-39426

1 | because there is complete diversity of citizenship among the parties and the amount in

2 | controversy, exclusive of interest and costs, exceeds $75,000.00.

3 | **VENUE**

4 | 6.     Venue is proper in this District under 28 U.S.C. § 1391(a)(2) because a

5 | substantial part of the acts or omissions giving rise to the claim occurred here.  In

6 | addition, a related action already is pending in this District—*Oracle Corporation v.*

7 | *Skywire Holdings, LLC, et al.*, Case No. CV 08 5702.  Furthermore, HCC agreed in its

8 | policy "to submit to the jurisdiction of any court of competent jurisdiction within the

9 | United States."

10 | **THE HCC INSURANCE POLICY**

11 | 7.     HCC provided professional liability errors and omissions insurance

12 | coverage to, among others, Skywire under policy number S708-10104 (the "Policy").

13 | The Policy was in effect from February 23, 2008, to February 23, 2009, and provides

14 | a $5,000,000 limit of liability.  A true and correct copy of the Policy is attached hereto

15 | as Exhibit A and incorporated by reference.

16 | 8.     Skywire is a named insured under the Policy.  *Id.*, Endorsement 12.

17 | 9.     The Policy obligates HCC to pay for

18 |         any Loss and Claim Expenses . . . as the Insured acting in

19 |         the profession described in Item 3 of the Declarations shall

20 |         become legally obligated to pay for Claim or Claims first

21 |         made against the Insured during the Policy Period by reason

22 |         of any Wrongful Act by an Insured.

23 | Policy, Ex. A, ¶ 1.

24 | 10.     The Policy defines "Loss" to mean "a monetary judgment or settlement

25 | for damages including an award by a court of reasonable attorney's fees and costs to a

26 | party making [a] Claim . . ." *Id.*, ¶ II(d).

27 | 11.     The Policy defines "Claim" to mean "a demand received by the Insured

28 |

1    for compensation of damages . . . ." *Id.,* ¶ II(c).

2        12.    The Policy defines "Wrongful Act" as

3        any actual or alleged error or omission or breach of duty

4        committed or alleged to have been committed or for failure

5        to render such professional services as are customarily

6        rendered in the profession of the Insured as stated in Item 3

7        of the Declarations.

8    *Id.,* ¶ II(e).

9        13.    By endorsement, Item 3 of the Declarations is amended to read:

10       Named Insured's Profession:  Solely in the performance of

11       services as a Computer/Software Consultant, and providing

12       related Data Processing, Programming and Design Services,

13       and/or providing System Analysis, System Programming,

14       Data Processing, System Integration, Outsourcing

15       Development and Design, Management, Repair and

16       Maintenance of Computer Products, Networks and Systems,

17       Training in the use of any Technology Product, Technology

18       Consulting services, ASP (Application Service Provider)

19       services, shipping service, color and black and white

20       printing services, Producing Directories and Producing

21       Policy Kits, for others for a fee.

22   *Id.*, Endorsement 1.

23       14.    The Policy also provides, "[w]ith respect to the insurance afforded by this

24   Policy, [HCC] shall have the right and duty to defend any Claim brought against the

25   Insured alleging a covered Wrongful Act." *Id.*, Endorsement 21.

26               **THE U.S. RISK AND GRESHAM CLAIM**

27       15.    Prior to Oracle's acquisition, Skywire was a leading provider of

28

DICKSTEIN
SHAPIRO LLP

DOCSLA-39426

1   insurance and document management business applications.  It developed and
2   provided professional services regarding its software that focused, primarily, on the
3   business requirements of the insurance industry.

4        16.    U.S. Risk Insurance Group ("U.S. Risk") and Gresham & Associates,
5   Inc. ("Gresham") are Managing General Agents or General Agents.  In the insurance
6   industry, Managing General Agents and General Agents operate in the wholesale
7   production of insurance rather than the retail production of insurance handled in
8   insurance agents.  In addition, Managing General Agents and General Agents operate
9   as underwriting service entities.

10       17.    In November 2003, U.S. Risk, Gresham, and Skywire entered into the
11  "System Development and License Agreement" (the "U.S. Risk Development
12  Agreement "), under which Skywire agreed to provide services to develop a custom
13  "agency management" software—to be known as "Policyware"—for U.S. Risk and
14  Gresham, U.S. Risk and Gresham agreed to pay $500,000 each and to consult with
15  Skywire during the development/implementation process.  Oracle was not a party to
16  the U.S. Risk Development Agreement.

17       18.    On June 19, 2008, Oracle's parent, Oracle Corporation, entered into a
18  Purchase Agreement with Skywire Holdings, LLC ("Skywire Holdings") and its
19  Seller Representative, Donald Braun, under which Oracle Corporation acquired the
20  membership units in Skywire.  Oracle ultimately became the successor-in-interest to
21  Skywire.

22       19.    On June 20, 2008, the day after the Purchase Agreement was signed, U.S.
23  Risk and Gresham, through their outside counsel, sent a letter to Skywire setting forth
24  their claims under the U.S. Risk Development Agreement.  In that letter, U.S. Risk
25  and Gresham generally alleged that Skywire had engaged in various wrongful acts,
26  including failing to satisfy its obligations under the U.S. Risk Development
27  Agreement due to negligence and deficiencies in its provision of professional services

28
DICKSTEIN
SHAPIRO LLP

5

DOCSLA-39426

1    to build the Policyware software system and improperly inducing U.S. Risk and

2    Gresham to enter the U.S. Risk Development Agreement.  U.S. Risk also alleged that

3    the Policyware system, which was essential to the successful operation of its business,

4    was materially flawed and did not meet the basic contractual requirements of the U.S.

5    Risk Development Agreement.  As a result, U.S. Risk and Gresham asserted that they

6    had suffered damages of at least $5,000,000.  A true and correct copy of the June 20,

7    2008, claim letter from U.S. Risk and Gresham is attached hereto as Exhibit B and

8    incorporated by reference.

9         20.    Because of the terms of the Purchase Agreement, as well as the U.S. Risk

10   Development Agreement, Oracle was exposed to Skywire's liability to U.S. Risk and

11   Gresham, including for U.S. Risk and Gresham's out-of-pocket costs incurred in their

12   involvement in the U.S. Risk Development Agreement, any consequential and

13   punitive damages they might prove in litigation, and their attorneys' fees (as well as

14   Oracle's own costs of defending against litigation with U.S. Risk and Gresham).

15   Accordingly, pursuant to the Purchase Agreement, Oracle assumed Skywire's defense

16   of the U.S. Risk and Gresham claim.

17        21.    Under the terms of the U.S. Risk Development Agreement, Oracle was

18   required to participate in an early mediation of the claims asserted by U.S. Risk and

19   Gresham.  That mediation proceeded on August 21, 2008.

20        22.    Starting with the mediation and in follow-up discussions over subsequent

21   weeks, Oracle was able to negotiate a favorable settlement that it believed was

22   preferable to any outcome it could hope to achieve in litigation—both from a damages

23   perspective and a cost of litigation perspective.  The settlement, valued at $1,920,000,

24   was entered into between Oracle, U.S. Risk and Gresham on or about September 25,

25   2008.

26   ## HCC'S BREACH OF ITS INSURANCE POLICY

27        23.    Because Oracle became Skywire's successor-in-interest as to insurance

28

DICKSTEIN
SHAPIRO LLP

COMPLAINT

DOCSLA-39426

1   coverage under the Policy issued by HCC, subject only to the applicable policy limit,

2   deductible, or exclusions, Oracle is entitled to have HCC pay for its loss in connection

3   with the U.S. Risk and Gresham claim that Oracle settled.

4       24.   On or about July 16, 2008, Skywire provided timely notice to HCC

5   regarding the U.S. Risk and Gresham claim relating to the U.S. Risk Development

6   Agreement.

7       25.   By letter dated July 21, 2008, HCC acknowledged receipt of the notice of

8   the claim.  Thereafter, HCC acknowledged its duty to defend by notifying Oracle of

9   HCC's approved defense counsel to handle Oracle's defense of the U.S. Risk and

10  Gresham claim.

11      26.   Since notifying HCC of the U.S. Risk and Gresham claim, Oracle has

12  provided extensive information to HCC regarding the claim and reasonably and timely

13  cooperated with HCC.  This provision of information includes:

14          a.  On August 27 and 29, 2008, Oracle sent emails to HCC, in which it

15              provided it with a detailed explanation of the settlement discussions and

16              forwarded copies of the mediation statements exchanged by Oracle and

17              U.S. Risk and Gresham;

18          b.  On September 12, 2008, Oracle's counsel sent a detailed letter to HCC's

19              counsel explaining the nature of the claims asserted by U.S. Risk and

20              Gresham and the details regarding Oracle's settlement of the claim,

21              including all correspondence, contracts and other materials that Oracle

22              had relating thereto;

23          c.  On September 25, 2008, Oracle provided HCC with a then current draft

24              of the settlement agreement that Oracle ultimately executed with U.S.

25              Risk and Gresham; and

26          d.  Numerous communications by Oracle to HCC providing additional

27              information sought to assist HCC in understanding the claim tendered

28

DICKSTEIN
SHAPIRO LLP

COMPLAINT

DOCSLA-39426

1     under the policy.

2         27.    In telephone conferences on September 8 and 24, 2008, as well as in

3     letters dated September 4, 2008 and September 12, 2008, and numerous electronic

4     mails, Oracle updated HCC as to the status of the settlement discussions with U.S.

5     Risk and Gresham.  In those communications, Oracle told HCC of the potential

6     exposure if the claims went into litigation and of its belief in the reasonableness of the

7     settlement being negotiated.

8         28.    On September 5, 2008, HCC expressly waived any right to object to

9     Oracle's settlement of the U.S. Risk and Gresham claim on the grounds that HCC had

10    not consented to the settlement and stated that HCC would not raise lack of consent as

11    a coverage defense.

12        29.    Notwithstanding its acknowledgement of notice of the U.S. Risk and

13    Gresham claim and the additional information provided by Oracle and Skywire, as of

14    the scheduled time of the mediation with U.S. Risk and Gresham, HCC had not

15    provided a coverage position.  In fact, despite the numerous communications with

16    Oracle regarding the mediation and settlement discussions and despite HCC's

17    provision of its approved defense counsel to handle Oracle's defense of the U.S. Risk

18    and Gresham claim, HCC failed to provide a coverage position prior to Oracle's

19    settlement of the U.S. Risk and Gresham claim on September 25, 2008.

20        30.    In these September 2008 communications with Oracle regarding the

21    settlement discussions, HCC never objected to the settlement between Oracle and U.S.

22    Risk and Gresham.  In fact, HCC encouraged Oracle to settle the claim in order to

23    ensure that the damages were capped.  In addition, HCC relayed to Oracle that it was

24    willing to provide at least some level of coverage for the U.S. Risk and Gresham

25    claim.

26        31.    On September 26, 2008, after the settlement had been entered, HCC

27    provided its first coverage position to Oracle.  In that letter, HCC stated numerous

28

1   reservations of rights regarding the U.S. Risk and Gresham claim, but did not deny

2   coverage.

3        32.    In a letter one week later, on October 3, 2008, HCC set forth all of the

4   reasons it believed demonstrated that there is no coverage for the claim, but offered

5   "in the spirit of compromise" an amount less than 10% of the value of the settlement

6   to resolve the claim.

7        33.    Since receipt of the September 26 and October 3 letters, Oracle has sent

8   numerous letters to HCC and engaged in numerous discussions with HCC, through its

9   counsel, in which Oracle has explained why the denial of coverage is in error and

10  asked HCC to withdraw its wrongful denial of coverage.  HCC has continued to stand

11  by its denial of coverage.

12       34.    HCC is taking this position, notwithstanding the facts stated in

13  paragraphs 7 to 14 above.  Furthermore, HCC is doing so even though:

14           a.  Oracle is entitled to coverage under the Policy for liability incurred as

15               successor-in-interest to Skywire;

16           b.  The allegations stated by U.S. Risk and Gresham are for covered

17               wrongful acts;

18           c.  The U.S. Risk and Gresham claim was first made against Skywire during

19               the policy period;

20           d.  Oracle became legally obligated to pay for the U.S. Risk and Gresham

21               claim made against Skywire during the policy period;

22           e.  Oracle notified HCC of the settlement with U.S. Risk and Gresham prior

23               to entering into the settlement; and

24           f.  HCC collected substantial premiums on the Policy, based on the

25               representation that it would provide coverage for liability for wrongful

26               acts of an insured in the stated profession of software development.

27       35.    Oracle has complied with all terms and conditions contained in the

28

DICKSTEIN
SHAPIRO LLP

9

COMPLAINT

DOCSLA-39426

1 | Policy, except to the extent that its performance has been or is excused or waived by
2 | HCC.

### FIRST CAUSE OF ACTION

### (Breach of Contract)

36.    Oracle realleges and incorporates by reference herein each allegation contained in paragraphs 1 through 35 above.

37.    Implied in the Policy is a covenant that HCC would act in good faith and deal fairly with Oracle, that it would do nothing to interfere with Oracle's rights to receive the benefits due under the Policy, and that it would give at least the same level of consideration to Oracle's interests as it gives to its own interests.

38.    HCC also had a duty under the Policy, the law, and insurance industry custom and practice to conduct a thorough investigation, including as to all of the bases that might support Oracle's claim for coverage, before denying coverage for Oracle's loss, including defense fees and costs, in connection with the U.S. Risk and Gresham claim.  Oracle is informed and believes, and on that basis alleges, that instead of performing this duty, HCC sought to avoid coverage for this loss despite HCC's understanding of the coverage provided by its Policy and of Oracle's reasonable expectations for coverage.  HCC did so in conscious and complete disregard of Oracle's rights, the design of and intent behind the Skywire insurance program, the information provided by Skywire during the underwriting process, the provisions of the Policy, and public policy.  Furthermore, HCC sought to avoid coverage even though it knew Skywire purchased the Policy with the understanding and expectation that it, as well as its successors-in-interest, would be covered thereunder for loss like the U.S. Risk and Gresham claim relating to its professional services.

39.    HCC breached its duties under the Policy by, among other things:

     a.    Failing to pay anything towards the defense fees and costs Oracle

DICKSTEIN
SHAPIRO LLP

DOCSLA-39426

1       has incurred in defending Skywire and itself in connection with the

2       U.S. Risk and Gresham claim, including the mediation of that

3       claim;

4       b.    Asserting that the Policy does not cover Oracle's loss in

5           connection with the claims relating to the alleged wrongful acts in

6           Skywire's performance of its professional services in connection

7           with the U.S. Risk Development Agreement;

8       c.    Asserting grounds to avoid coverage that it knows are not

9           supported by, and are contrary to, the terms of the Policy, the law,

10         insurance industry custom and practice, the parties' course of

11         dealings, and the facts, including the representations that HCC

12         made to Skywire during the negotiation for its Policy, either

13         directly or through the broker, CRC Insurance Services, Inc.;

14       d.    Failing to conduct an adequate investigation of Oracle's loss and

15           asserting grounds to avoid coverage based on its inadequate

16         investigation;

17       e.    Failing to fully inquire into possible bases that might support

18           coverage for Oracle's loss; and

19       f.    By giving greater consideration to its own interests than it gave to

20           Oracle's interests.

21     40.    As a direct and proximate result of HCC's breach of contract, Oracle has

22 suffered, and continues to suffer, damages in an amount in excess of the Court's

23 jurisdictional limits.  The actual amount of damages has not yet been precisely

24 ascertained, but includes all defense fees and costs that Oracle incurred and the value

25 of the settlement in connection with the U.S. Risk and Gresham claim, plus interest.

26 When the precise amount of Oracle's damages is known, Oracle will seek leave to

27 amend its Complaint accordingly.

28

DICKSTEIN
SHAPIRO LLP

DOCSLA-39426

**SECOND CAUSE OF ACTION**

**(Tortious Breach of the Implied Covenant of**

**Good Faith and Fair Dealing)**

41.     Oracle realleges and incorporates by reference herein each allegation contained in paragraphs 1 through 35 above.

42.     In breach of the implied covenant of good faith and fair dealing, HCC did the things and committed the acts alleged above for the purpose of consciously withholding from Oracle the rights and benefits to which Oracle is entitled under the Policy and without considering Oracle's interests at least to the same extent as it considered its own interests.

43.     As a direct and proximate result of HCC's acts, Oracle has been damaged in an amount in excess of the Court's jurisdictional limits.  The actual amount of damages has not yet been precisely ascertained.  When the precise amount of damages is known, Oracle will seek leave to amend its Complaint accordingly.

44.     HCC's acts are inconsistent with Oracle's reasonable expectations, are contrary to established claims practices and legal requirements, and constitute bad faith.

45.     Pursuant to the holding in *Brandt v. Superior Court*, 37 Cal. 3d 813 (1985), Oracle is entitled to recover all attorneys' fees and expenses that it reasonably has incurred, and is incurring, in its efforts to obtain the Policy's benefits that HCC wrongfully has withheld, and is withholding, in bad faith, plus interest.  The amount of these attorneys' fees and expenses is currently unknown, and is continuing.  Oracle will seek leave to amend this Complaint to allege the precise amount of these fees and costs when that amount is known.

46.     HCC's conduct is despicable and has been done with a conscious disregard of Oracle's rights, constituting oppression, fraud, and/or malice.  HCC has engaged in a series of acts designed to deny the benefits due under its Policy.

DICKSTEIN
SHAPIRO LLP

COMPLAINT

DOCSLA-39426

1   Specifically, HCC, by acting as alleged above, in light of the information, facts, and

2   relevant law to the contrary, consciously disregarded Oracle's rights and forced Oracle

3   to incur substantial financial loss, without any assistance from it, thereby inflicting

4   substantial financial damage on Oracle.  HCC ignored Oracle's interests and concerns,

5   with the requisite intent to injure, and acted fraudulently, within the meaning of

6   California Civil Code section 3294.  Therefore, Oracle is entitled to recover punitive

7   damages from HCC in an amount sufficient to punish and to make an example of

8   HCC and in order to deter similar conduct.

9                                   **THIRD CAUSE OF ACTION**

10                                      **(Declaratory Relief)**

11          47.    Oracle realleges and incorporates by reference herein each allegation

12   contained in paragraphs 1 through 35 above.

13          48.    HCC has contended that it has no duty to defend or pay for Oracle's loss

14   in connection with U.S. Risk and Gresham claim.  Oracle disputes HCC's contentions.

15          49.    Oracle contends that it complied with all terms and conditions contained

16   in the Policy, except to the extent its performance has been or is excused or waived by

17   HCC.

18          50.    Oracle contends that the Policy provides coverage for Oracle's loss,

19   including the defense fees and costs it expended in connection with and settlement

20   value of the U.S. Risk and Gresham claim.  Oracle also contends that HCC cannot

21   deny coverage for this loss and that HCC's position to date is contrary to the law and

22   public policy.

23          51.    Oracle further contends that the Policy is to be interpreted in a reasonable

24   manner to provide the coverage that the parties intended and understood was being

25   provided and that is in accord with Oracle's reasonable expectations.  Oracle is

26   informed and believes, and on that basis alleges, that HCC disputes its contentions.

27          52.    An actual and justiciable controversy exists between Oracle and HCC

28

DICKSTEIN
SHAPIRO LLP

COMPLAINT

DOCSLA-39426

1   concerning the matters alleged herein.

2      53.     Oracle seeks a judicial declaration confirming that HCC's contentions as

3   stated above are wrong and that Oracle's contentions as stated above are correct; that

4   HCC must honor all duties under its Policy, including its duty to pay for Oracle's loss,

5   including defense fees and costs incurred in connection with and the settlement value

6   of the U.S. Risk and Gresham claim; and that because of HCC's conduct, Oracle is

7   excused from performing or complying with any conditions and duties otherwise

8   imposed on it by the Policy.

9

10      WHEREFORE, Oracle prays for judgment as follows:

11

12                   **ON THE FIRST CAUSE OF ACTION**

13      1.     For damages, plus interest, according to proof at the time of trial;

14

15                **ON THE SECOND CAUSE OF ACTION**

16      2.     For damages, plus interest, according to proof at the time of trial;

17      3.     For reasonable attorneys' fees and expenses incurred in obtaining

18   the benefits due under the Policy, plus interest;

19      4.     For punitive damages in an amount to be determined at the time of

20   trial;

21

22                  **ON THE THIRD CAUSE OF ACTION**

23      5.     For declarations in accord with Oracle's contentions stated above;

24   and

25

26                    **ON ALL CAUSES OF ACTION**

27      6.     For costs of suit incurred herein; and

28

DICKSTEIN
SHAPIRO LLP

COMPLAINT

DOCSLA-39426

1        7.     For such other, further, and/or different relief as may be just and

2  proper.

3

4  DATED: March 26, 2009        DICKSTEIN SHAPIRO LLP

5

6                    By: _Cassandra Shivers (vvv)_

7                          Cassandra C. Shivers
                          Attorneys for Plaintiff Oracle USA, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DICKSTEIN
SHAPIRO LLP

DOCSLA-39426

1

## **DEMAND FOR JURY TRIAL**

2

3     Oracle hereby demands a trial by jury in this actions

4

5   DATED: March 26, 2009          DICKSTEIN SHAPIRO LLP

6

7                                  By:  *Cassandra Shivers (mm)*

8                                       Cassandra C. Shivers
                                        Attorneys for Plaintiff Oracle USA, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**



# HCC SPECIALTY INSURANCE COMPANY

ADMINISTRATIVE OFFICES: 13403 NORTHWEST FREEWAY, HOUSTON, TEXAS 77040

## DECLARATIONS
## PROFESSIONAL LIABILITY ERRORS & OMISSIONS INSURANCE
### THIS IS A CLAIMS MADE POLICY

Broker No.:   9994087                                    No.:   S708-10104
              CRC INSURANCE SERVICES, INC.      Renewal of:    S707-10101

Item 1.   Named Insured:   SKYWIRE HOLDINGS, LLC

Item 2.   Address:         3000 INTERNET BOULEVARD SUITE 200
                           FRISCO, TX 75034

Item 3.   Named Insured's Profession:   See Endorsement # 1, E32

Item 4.   Limit of Liability: $   5,000,000          Each Claim and in the Aggregate
                                                     including Claim Expenses.

Item 5.   Deductible:     $      100,000             Each Claim including Claim Expenses.

Item 6.   Notice of Claim to:   PIA, Director of Claims
                                37 Radio Circle Drive, Mount Kisco, NY 10549

Item 7.   Policy Period:        Inception Date:   2/23/08   Expiration Date:   2/23/09
                                12:01 A.M. Standard Time at the address of the Named Insured herein.

Item 8.   Retroactive Date:   2/23/07      Item 9.   Date of Application:   2/23/08

Item 10. Premium:        $   171,000.00 Administrative/Inspection Fee. $50.00

Item 11. Extension Period:  12 MONTHS      Item 12. Extension Percentage:  100.00%

        Attachments: (1)E32, (2)E46, (3)E160, (4)E193, (5)E181, (6)E109TX, (7)E174,
        (8)E69, (9)E53, (10)E57, (11)E91, (12)E31, (13)E110, (14)E171, (15)E127,
        (16)E128, (17)E94, (18)E97, (19)E133, (20)E192, (21)E93.
        STATE TAX  $8,295.93
        STAMPING FEE $102.63          —This Policy has been signed at _____   Upper Saddle River, NJ
        BROKER FEE _____
        POLICY FEE  $50.00 _____   Dated _____   by _____   EDX

MPL001 (09/06)                          BROKER COPY

A
17

# *Endorsement*

NAMED INSURED:   SKYWIRE HOLDINGS, LLC

### NAMED INSURED'S PROFESSIONAL DESCRIPTION ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that Item 3 of the Declarations, the "Named Insured's Profession", shall read as follows:

3.   Named Insured's Profession:

   Solely in the performance of services as a Computer/Software Consultant, and providing related Data Processing, Programming and Design Services, and/or providing System Analysis, System Programming, Data Processing, System Integration, Outsourcing Development and Design, Management, Repair and Maintenance of Computer Products, Network and Systems, Training in the use of any Technology Product, Technology Consulting services, ASP (Application Service Provider) services, shipping service, color and black and white printing services, Producing Directories and Producing Policy Kits, for others for a fee.

All other terms and conditions remain unchanged.

Endorsement effective:   2/23/08   HMP Policy No. S708-10104

Endorsement No.   1

                              Professional Indemnity Agency, Inc.


                              by_____
                                 (Authorized Representative)

HMP E-32

A
18

# *Endorsement*

Named Insured: SKYWIRE HOLDINGS, LLC

NUCLEAR INCIDENT EXCLUSION CLAUSE-LIABILITY-DIRECT (BROAD)

In consideration of the premium charged, it is understood and agreed that this Policy of Insurance does not apply:

I.   Under any Liability Coverage, to injury, sickness, disease, death or destruction

    (a) with respect to  which  an Insured under the policy is also an Insured under  a  nuclear  energy  liability  policy issued by Nuclear  Energy  Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or  would  be  an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (b) resulting  from  the  hazardous properties of nuclear material and with  respect  to  which (1) any person or organization is required  to  maintain  financial  protection  pursuant to the Atomic Energy  Act  of 1954, or any law amendatory thereof, or (2) the  Insured  is, or had this policy not been issued would be, entitled  to  indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States  of  America,  or  any  agency thereof, with any person or organization.

II.  Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

    (a) the nuclear  material (1) is at any nuclear facility owned by, or operated by  or . on  behalf of, any Insured or (2) has been discharged or dispersed therefrom;

    (b) the nuclear  material  is  contained in spent fuel or waste at any   time   possessed,   handled,  used,  processed,  stored, transported or disposed of by or on behalf of an Insured; or

    (c) the injury, sickness, disease, death or destruction arises out of the  furnishing by an Insured of services, materials, parts or  equipment  in  connection with the planning, construction, maintenance, operation  or use of any nuclear facility, but if such facility  is located within the United States of America, its. territories  or possessions or Canada, this exclusion (c) applies only  to  injury to or destruction of property at such nuclear facility.

*A*

*19*

# *Endorsement*

NUCLEAR INCIDENT EXCLUSION, Continued                Page 2 of 2

IV.  As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive
properties; "nuclear material" means source material, special nuclear
material or byproduct material; "source material", "special nuclear
material", and "byproduct material" have the meanings given them in
the Atomic Energy Act 1954 or in any law amendatory thereof; "spent
fuel" means any fuel element or fuel component, solid or liquid, which
has been used or exposed to radiation in a nuclear reactor; "waste"
means any waste material (1) containing byproduct material and (2)
resulting from the operation by any person or organization of any
nuclear facility included within the definition of nuclear facility
under paragraph (a) or (b) thereof;"nuclear facility" means

  (a)  any nuclear reactor;
  (b)  any equipment  or  device  designed or used for (1) separating
       the  isotopes  of  uranium  or  plutonium,  (2)  processing or
       utilizing spent fuel, or (3) handling, processing or packaging
       waste;
  (c)  any  equipment  or device used for the processing, fabricating
       or  alloying  of  special  nuclear  material if at any time the
       total amount of such material in the custody of the insured at
       the  premises  where  such  equipment  or  device  is  located
       consists of  or  contains  more  than 25 grams of plutonium or
       uranium 233 or any combination thereof, or more than 250 grams
       of uranium 235;
  (d)  any  structure, ·basin, excavation, premises or place prepared
       or used for the storage or disposal of waste;

and includes the site on which any of the foregoing is located, all
operations conducted on such site and all premises used for such
operations;  "nuclear reactor" means any apparatus designed or used to
sustain nuclear fission in a self-supporting chain reaction or to
contain a critical mass of fissionable material.  With respect to
injury to or destruction of property, the word "injury" or
"destruction" includes all forms of radioactive contamination of
property.

It is understood and agreed that, except as specifically provided in
the foregoing to the contrary, this clause is subject to the terms,
exclusions, conditions and limitations of the Policy of Insurance
to which it is attached.

It is further understood and agreed that this Policy has a 25%
minimum earned premium condition.

All other terms and conditions remain unchanged.

Endorsement effective  2/23/08      HMP Policy No. S708-10104
Endorsement No.   2
                                    Professional Indemnity Agency, Inc.

                                    by_____
                                       (Authorized Representative)

HMP E-46
E46

*A*
20

# *Endorsement*

NAMED INSURED:   SKYWIRE HOLDINGS, LLC

In consideration of the premium charged, it is hereby understood and agreed that the section of this Policy entitled "II. Definitions, part e), Wrongful Act", is amended to include the following:

With respect to the Insured's profession as stated in Item 3 of the Declarations, WRONGFUL ACT, shall also mean any actual or alleged:

1.  Libel, slander or other forms of defamation;
2.  Invasion or infringement of the right of privacy or publicity;
3.  Plagiarism, piracy or misappropriation of ideas under implied contract.

It is also understood and agreed that Exclusion "f" of this Policy is deleted in its entirety and replaced with the following:

f)  to any claim and claim expenses arising out of (1) false arrest, detention or imprisonment; (2) wrongful entry or eviction, or invasion of any right of private occupancy.

It is also understood and agreed that the words "copyright/trademark" are deleted from the section of this Policy entitled "IV. EXCLUSIONS, part d)".

It is further understood and agreed that this Policy does not apply to any claims and claims expenses based upon, or arising out of:

A) The sale, maintenance, or repair of any Computer Hardware.

It is further understood and agreed that this Policy shall not apply to any Claim and Claim Expenses arising out of any Insured's actual or alleged:

(1) misappropriation of confidential or proprietary information or trade secrets from a past or current employer of any Insured; or
(2) solicitation, recruiting or hiring of employees or workers from a past or current employer of any Insured.

It is further understood and agreed that the Independent Contractor(s), of the Insured are covered solely for their Professional Services provided on behalf of the Insured; but only if the Professional of the Independent Contractor(s) are the same as those set forth in Item 3 of the Declarations Page and in Endorsement No 1 of this Policy.

All other terms and conditions remain unchanged.

Endorsement effective  2/23/08      HMP Policy No. S708-10104

Endorsement No.   3               Professional Indemnity Agency, Inc.

                                  by_____
                                     (Authorized Representative)

HMP E-160

A
21

# *Endorsement*

NAMED INSURED: SKYWIRE HOLDINGS, LLC


In consideration of the premium charged, it is hereby understood and agreed that Section II. DEFINITIONS, part b), is amended to include the following:

5) The lawful spouse of an Insured (as set forth in items 1 -4 above) in any Claims made against such spouse solely by reason of spousal status or ownership interest in marital property/ assets that are sought as recovery for such Claim, but only if Claim does not allege any Wrongful Act or omission by such spouse.


All other terms and conditions remain unchanged.

Endorsement Effective:  2/23/08      Policy No.: S708-10104

Endorsement No.:    4

                              Professional Indemnity Agency, Inc.


                    by _____
                              (Authorized Representative)

HMP E-193

A
22

# *Endorsement*

NAMED INSURED:  SKYWIRE HOLDINGS, LLC

In consideration of the premium charged, it is hereby understood and agreed that the section of this Policy entitled IV. EXCLUSIONS is amended to include the following:

For, based upon, arising out of, or in any way related to the development, distribution, dissemination, installation, implementation, operation, maintenance and/or recommendation of Public Key Infrastructure;

It is further understood and agreed that the section of this Policy entitled II. DEFINITIONS is amended to include the following:

Public Key Infrastructure

"Public Key Infrastructure" ("PKI") means the policies, methods, equipment and procedures, including associated software, hardware and firmware, for establishing and managing a secure method for exchanging electronic information regarding the use of certification authorities, digital certificates, digital signatures, public and/or private keys or any other similar type of technology however labeled;

All other terms and conditions remain unchanged.

Endorsement effective   2/23/08     HMP Policy No. S708-10104

Endorsement No.    5

                                   Professional Indemnity Agency, Inc.

                                   by_____
                                      (Authorized Representative)

HMP E-181

A
23

# *Endorsement*

NAMED INSURED: SKYWIRE HOLDINGS, LLC

### SERVICE OF SUIT CLAUSE

As used in this endorsement, the "Company" refers to HCC Specialty
Insurance Company.

This applies in jurisdictions where the Company is not an admitted
insurer.

It is agreed that in the event of the Company's failure to pay the
amount claimed to be due hereunder, the Company, at the request of the
Insured, will submit to the jurisdiction of any court of competent
jurisdiction within the United States and will comply with all
requirements necessary to give such court jurisdiction and all matters
arising hereunder shall be determined in accordance with the law and
practice of such court.

It is further agreed that, pursuant to any statute of any state,
territory or district of the United States which makes provision
therefore, the Company hereby designates the Superintendent,
Commissioner or Director of Insurance or other officer specified for
that purpose in the statute, or his successor or successors in office,
as its true and lawful attorney upon whom may be served any lawful
process in any action, suit or proceeding instituted by or on behalf
of the Insured or any beneficiary hereunder arising out of this policy
of insurance, and hereby designates the President of the HCC Specialty
Insurance Company in care of the General Counsel, at 13403 Northwest
Freeway, Houston, TX 77040, as the person to whom the said
officer is authorized to mail such process or true copy thereof.

It is further understood and agreed that service of process in such
suit may be made upon CHRISTOPHER L. MARTIN Attorney-In-Fact, at
13403 Northwest Freeway, Houston, TX 77040, and that in any suit
instituted against any one of them upon this contract, the Company
will abide by the final decision of such Court or of any Appellate
Court in the event of an appeal.

All other terms and conditions remain unchanged.

Endorsement Effective:  2/23/08      Policy No.: S708-10104

Endorsement No.:    6

                                    Professional Indemnity Agency, Inc.


                        by _____
                                (Authorized Representative)


HMP E-109

A
24

# *Endorsement*

NAMED INSURED: SKYWIRE HOLDINGS, LLC

In consideration of the premium charged it is hereby understood and
agreed that Section IV. EXCLUSIONS is amended to include the
following:

This Policy does not apply to and the Company shall not be liable for
Damages and/or Claims Expenses resulting from any claim made against
the Insured:

P. for, based upon, or arising from any alleged unsolicited sending
   of information by fax, electronic mail (e-mail), or via any other
   means where prohibited by law.


All other terms and conditions remain unchanged.

Endorsement effective:  2/23/08        Policy No.: S708-10104

Endorsement No.:    7


                          Professional Indemnity Agency, Inc.

                    by: _____
                              (Authorized Representative)




HMP E-174

# *Endorsement*

NAMED INSURED:   SKYWIRE HOLDINGS, LLC

In consideration of the premium charged, and the deductible shown
on Item #5, of the Declarations, it is hereby understood and
agreed that Item #8 of the Declarations, is amended to show a
Retroactive Date of 2/23/07 in lieu of 6/19/01, for limits
provided in excess of the primary $3,000,000.

All other terms and conditions remain unchanged.

Endorsement effective:  2/23/08 HMP Policy No.: S708-10104

Endorsement No.:     8

                            Professional Indemnity Agency, Inc.

                   by _____
                            (Authorized Representative)

HMP E-69
E69

A
26

# *Endorsement*

NAMED INSURED:   SKYWIRE HOLDINGS, LLC

In consideration of the premium charged, it is hereby understood
and agreed that Item 11. of the Declarations Page, Extension Period,
and Item 12. of the Declarations Page, Extension Percentage,
are amended to include the following:

| Extension Period: | Extension Percentage: |
|---|---|
| 24 Months | 175% |
| 36 Months | 225% |

All other terms and conditions remain unchanged.

Endorsement effective:  2/23/08       HMP Policy No.: S708-10104

Endorsement No.:    9

                           Professional Indemnity Agency, Inc.

                 by _____
                              (Authorized Representative)

HMP E-53

*A*

*27*

# *Endorsement*

NAMED INSURED:  SKYWIRE HOLDINGS, LLC


In consideration of the premium charged, it is hereby understood
and agreed, that the Section of this Policy entitled IV.EXCLUSIONS,
part f), is deleted in its entirety.

It is further understood and agreed, that Endorsment HMP E-160,
part f), is deleted in its entirety.



All other terms and conditions remain unchanged.

Endorsement effective:  2/23/08        Policy No.: S708-10104

    Endorsement No.:  10

                        Professional Indemnity Agency, Inc.

              by:  _____
                        (Authorized Representative)


HMP E-57
E57

A
28

# *Endorsement*

NAMED INSURED:   SKYWIRE HOLDINGS, LLC

In consideration of the premium charged, it is hereby understood
and agreed that punitive damages shall not be considered to be
"fines" and/or "penalties" in the section of this Policy
entitled II. DEFINITIONS d) Loss.

All other terms and conditions remain unchanged.

Endorsement effective:  2/23/08        Policy No.: S708-10104

   Endorsement No.:  11

                             Professional Indemnity Agency, Inc.

                   by: _____
                        (Authorized Representative)

HMP E-91
E91

A
29

# *Endorsement*

NAMED INSURED:   SKYWIRE HOLDINGS, LLC

### NAMED INSURED AMENDMENT ENDORSEMENT

In consideration of the premium charged, it is hereby understood and
agreed that Item 1. of the Declarations Page, Named Insured, is
amended to include the following:

|  | Retroactive Date: |
|---|---|
| Skywire Software, LLC | 6/19/01 |
| Docucorp International, Inc. | 9/24/04 |
| Newbridge Information Services | 9/24/04 |
| Matrix Digital Technologies | 9/24/04 |
| Whitehill Technologies | |

All other terms and conditions remain unchanged.

Endorsement effective  2/23/08     HMP Policy No. S708-10104

Endorsement No.  12

Professional Indemnity Agency, Inc.

by_____
  (Authorized Representative)

HMP E-31
E31

A
30

# *Endorsement*

Named Insured: SKYWIRE HOLDINGS, LLC

TEXAS SURPLUS LINES CLAUSE

"THIS Insurance contract is with an insurer not licensed to trans-
act insurance in this state and is issued and delivered as a
surplus lines coverage pursuant to the Texas Insurance Statutes.
The State Board of Insurance does not audit the finances or review
the solvency of the surplus lines insurer providing this coverage,
and this insurer is not a member of the Property and Casualty
Insurance Guaranty Association created under Article 21.28-C,
Insurance Code. Article 1.14.2, Insurance Code, requires payment
of 4.85 percent tax on gross premium."

04/98
LSW1023

A
31

# *Endorsement*

TEXAS COMPLAINTS NOTICE                    Page 2 of 2

IMPORTANT NOTICE

1.  To obtain information or make a complaint

    (a) You may contact the Texas Department of Insurance to
        obtain information on companies, coverages, rights or
        complaints at:
                    1-800-252-3439

    (b) You may write the Texas Department of Insurance:

2.  PREMIUM OR CLAIM DISPUTES:

    Should you have a dispute concerning your premium or about a
    claim you should contact your broker first. If the dispute is

    not resolved, you may contact the Texas Department of Insur-
    ance.


3.  ATTACH THIS NOTICE TO YOUR POLICY:

    This notice is for information only and does not become a part
    or condition of the attached document.

                    Policy No. S708-10104

04/98
LSW1022


HMP E-110
E110

A
32

# *Endorsement*

NAMED INSURED:  SKYWIRE HOLDINGS, LLC

In consideration of the premium charged, it is hereby understood and agreed that exclusion "e" of this Policy is deleted in its entirety, and replaced with the following:

e) For bodily injury, sickness, disease, emotional distress, mental anguish or death of any person.

It is further understood and agreed that the following exclusion shall be added to the section of this Policy entitled IV. EXCLUSIONS:

p) For injury to or destruction of any tangible property or loss of use resulting therefrom, except to the extent such is directly caused by the performance by the Insured of the professional services as are customarily rendered in the profession of the Insured as stated in Item 3 of the Declarations Page.

All other terms and conditions remain unchanged.

Endorsement effective:  2/23/08        Policy No.: S708-10104

Endorsement No.:   14

                              Professional Indemnity Agency, Inc.

                    by: _____
                         (Authorized Representative)

HMP E-171

A
33

# *Endorsement*

NAMED INSURED:   SKYWIRE HOLDINGS, LLC

### ORGANIC GROWTHS EXCLUSIONARY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that this Policy shall not apply to and no coverage will be afforded for any Claim, including any Loss or Claim Expenses, which, either in whole or in part, directly or indirectly, is for, based upon, relates to, or arises out of the formation, growth, presence, release, dispersal, containment, removal, testing for, or detection or monitoring of any molds, fungi, spores, or other similar growths or organic matter, including but not limited to aspergillus, penicillium, or any strain or type of Stachybotris, commonly collectively referred to as the "Black Molds".

All other terms and conditions remain unchanged.

Endorsement effective   2/23/08      HMP Policy No. S708-10104

Endorsement No.  15

Professional Indemnity Agency, Inc.

by_____
    (Authorized Representative)

HMP E-127
E127

A
34

# *Endorsement*

NAMED INSURED:   SKYWIRE HOLDINGS, LLC

### TERRORISM EXCLUSIONARY ENDORSEMENT

In consideration of the premium charged, it is hereby expressly understood and agreed that this Policy shall not apply to and no coverage shall be afforded for any Loss or Claims Expenses for, based upon, arising out of, or in connection with, either directly or indirectly, whether by way of direct recovery, contribution, or indemnity, any Terrorist Act of any kind, type, or nature whatsoever.

For purposes of this endorsement, the term "Terrorist Act" shall mean any unlawful act taken, intended, planned, or threatened, alone or in conspiracy, for purposes of coercion, whether for political, religious, ideological, monetary, or any other reasons, and shall include, but shall not be limited to, physical, mental, or emotional assaults or threats; assassination; the unlawful taking or occupation of any structure, premises, or space; the hijacking of any conveyance; the spreading or dissemination of biological, chemical, or other forms of contamination; sabotage; the tampering with any goods, products, or any other materials; the use of weapons of mass destruction, including nuclear, radiation, chemical, or biological weapons, devices, or materials; or any other act or acts deemed or declared by any governmental agency, authority, or official of any nationality to be a Terrorist Act.

All other terms and conditions remain unchanged.

Endorsement effective   2/23/08      HMP Policy No. S708-10104

Endorsement No.   16

                               Professional Indemnity Agency, Inc.


                               by_____
                                 (Authorized Representative)

HMP E-128
E128

# *Endorsement*

NAMED INSURED: SKYWIRE HOLDINGS, LLC

In consideration of the premium charged, it is hereby understood
and agreed that the Section of this Policy entitled II. DEFINITIONS,
is amended to include the following:
g) Internet media services, which means: the electronic publishing or
display of material (including advertising) on an internet site; or
providing or maintaining of: instant messaging, web-conferencing,
webcasting, internet-based electronic mail, online forums, bulletin
boards, list-serves or chat rooms;
h) Unauthorized use means the use of computer system by an unauthorized
person or persons or an authorized person or persons in and authorized
manner.
i) Malicious code means an unauthorized corrupting or harmful piece
of code. Malicious code includes, but is not limited to, computer
viruses, "trojan horses, "worms," and "time or logic bombs."
j) Denial of service attack means an attack launched by a person(s)
that sends an excessive volume of electronic data to a computer system
in order to deplete such computer system's capacity, and prevents
those who are authorized to do so from gaining access to such computer
system in a manner in which thay are legally entitled.
continued to Endorsement E-97

All other terms and conditions remain unchanged.

Endorsement effective:    2/23/08        Policy No.:   S708-10104

Endorsement No.:   17

                    Professional Indemnity Agency, Inc.

           by _____
                        (Authorized Representative)

HMP E-94
E94

A
36

# *Endorsement*

NAMED INSURED: SKYWIRE HOLDINGS, LLC

In consideration of the premium charged, it is hereby understood
and agreed that this Policy entitled II. DEFINITIONS is amended to
include the following:
k) Computer attack means unauthorized access, unauthorized use,
recipt or transmission of a malicious code or denial of service
attack which:
(1) alters, copies, misappropriates, corrupts, destroys, disrupts,
deletes, damages or prevents, restricts or hinders access to a computer
system;
(2) results in the disclosure of private or confidential information
stored on a computer system;
(3) results in identity theft
whether any of the foregoing is intentional or unintentional, malicious
or accidental, fraudulent or innocent, specifically targeted at you or
generally distrubeted, and regardless of whether the perpetrator is
motivated for profit.
l) Unauthorized access means the gaining of access to a computer
system by an unauthorized person or persons.

All other terms and conditions remain unchanged.

Endorsement effective:   2/23/08    HMP Policy No.: S708-10104

Endorsement No.:  18

                    Professional Indemnity Agency, Inc.

          by:_____
                  (Authorized Representative)

HMP E-97



# *Endorsement*

NAMED INSURED:  SKYWIRE HOLDINGS, LLC

In consideration of the premium charged, it is hereby understood
and agreed that the section of this Policy Titled "VIII.
CONDITIONS", part h), Extension of Policy Period is deleted
in its entirety and replaced with the following:

h) Extension of Policy Period
In the event of cancellation or non-renewal of this Policy in
its entirety by the Company or the Insured, this Policy may be
extended for the additional period as indicated in Item 11 of the
Declarations, for a premium based upon the percentage as indicated in
Item 12 of the Declarations of the total premium, for Claims first
made against the Insured during the said extension period provided:
1) The Wrongful Act giving rise to such Claim is committed or alleged
   to have been committed prior to the effective date of the cancel-
   lation or the original expiration date, whichever is applicable,
   and which would be otherwise insured by this Policy; and
2) Written notice of the exercise of this option is given by the
   Named Insured in Item 1 of the Declarations to the Company within
   ten (10) days after the effective date of cancellation or non-
   renewal; and
3) Such additional period shall be deemed part of the expiring
   Policy Period and not an addition thereto;and
4) For purposes of such additional period, coverage shall be applicable
   only with respect to Claims first made against the Insureds during
   such additional period. The provisions of Clause III of this
   Policy shall not be applicable to such additional period; and
5) The limit of liability applicable to the Extended Discovery Period
   shall be only the remaining limit of liability available under
   the Policy and no additional limit of liability shall be
   applicable; and
The quotation of a renewal premium higher than the expiring premium
or a change in other terms or conditions shall not be deemed to be
a cancellation or non-renewal by the Company.

All other terms and conditions remain unchanged.

Endorsement effective  2/23/08     HMP Policy No. S708-10104

          Endorsement No.  19

                              Professional Indemnity Agency, Inc.

                              by_____
                              (Authorized Representative)

HMP E-133
E133


38

# *Endorsement*

NAMED INSURED: SKYWIRE HOLDINGS, LLC

In consideration of the premium charged, it is hereby understood
and agreed that Section VI. LIMITS OF LIABILITY is amended to
include the following:

f) Supplemental Payments

The Company will pay the reasonable expenses incurred, including
actual and provable loss of wages, if the Insured is required by
the Company to attend proceedings or trial in the defense of a
covered Claim. Such payments are subject to the following:

1) The maximum reimbursement for such expenses shall not exceed
$250 per day for each Insured who attends such proceedings at
the Company's request;
2) The Company's maximum total liability for reimbursement shall
not exceed $5,000 per Claim regardless of the number of
Insureds who attend such proceedings at the Company's
request; and
3) Such payments shall be part of and shall reduce the available
Limit of Liability.

Solely for the purposes of this Endorsement, the Deductible amount
applicable to each Claim shall not apply to the supplemental
payments made by the Company under this subsection of the Policy.


All other terms and conditions remain unchanged.

Endorsement Effective:  2/23/08      Policy No.: S708-10104

Endorsement No.:  20

                              Professional Indemnity Agency, Inc.


                    by _____
                              (Authorized Representative)

HMP E-192

A
39

# *Endorsement*

NAMED INSURED: SKYWIRE HOLDINGS, LLC

In consideration of the premium charged, it is hereby understood and agreed that paragraph c) of Section VIII, CONDITIONS, of the Policy is deleted in its entirety and replaced with the following:

c)   Defense, Investigation and Settlement of Claim

1)   With respect to the insurance afforded by this Policy, the Company shall have the right and duty to defend any Claim brought against the Insured alleging a covered Wrongful Act. The Company shall have the right to make such investigation, negotiation and settlement of a Claim as it deems expedient, subject to paragraph (2) below.

2)   The Company shall not settle any claim without the consent of the Insured.  If, however, the Insured shall refuse to consent to any settlement recommended by the Company and shall elect to contest the claim or continue any legal proceedings in connection with such claim, then the Company's liability for the claim shall not exceed the amount for which the claim could have been so settled plus Claim Expenses incurred up to the date of such refusal.  Such amounts are subject to the provisions of Section VI, Limits of Liability.

All other terms and conditions remain unchanged.

Endorsement effective:  2/23/08      Policy No.: S708-10104

Endorsement No.:  21

Professional Indemnity Agency, Inc.

by: _____
               (Authorized Representative)

HMP     E-93
E93

A
40

# PROFESSIONAL LIABILITY
# ERRORS & OMISSIONS INSURANCE
## (This Insurance Is On A Claims Made Basis)

THIS POLICY IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD. DEFENSE COSTS REDUCE THE LIMIT OF LIABILITY PROVIDED. PLEASE REVIEW THIS POLICY CAREFULLY WITH YOUR INSURANCE BROKER OR ADVISOR.

In consideration of the payment of the premium, the undertaking of the Insured to pay the Deductible herein and in reliance upon all statements made and information in the application, which is attached hereto and made a part of this Policy, and subject to all the terms and conditions of this Policy, the Company agrees with the Insured as follows:

### I.  COVERAGE

**SPECIMEN**

**Coverage-Payment and Claims Made Provision**
The Company shall pay on behalf of the Insured any Loss and Claim Expenses in excess of the Deductible amount and subject to the Limit of Liability as the Insured acting in the profession described in Item 3 of the Declarations shall become legally obligated to pay for Claim or Claims first made against the Insured during the Policy Period by reason of any Wrongful Act by an Insured provided always that the Insured has no knowledge of such Wrongful Act prior to the Inception Date of this Policy and further provided that such Wrongful Act took place subsequent to the Retroactive Date set forth in Item 8 of the Declarations.

### II.  DEFINITIONS

Whenever used in this Policy, the following terms or words are defined as follows:

a) **Policy Period**
"Policy Period" shall mean the period from the Inception Date of this Policy to its Expiration Date as set forth in Item 7 of the Declarations or its earlier termination date, if any.

b) **Insured**
"Insured" or "Insureds" shall mean
1) The Named Insured as designated in Item 1 of the Declarations;
2) Any partner, executive officer, director or employee of the Named Insured while acting within the scope of their duties on behalf of the Named Insured;
3) Any former partner, executive officer, director or employee of the Named Insured while acting within the scope of their duties on behalf of the Named Insured;
4) The estate, the heirs, assigns or legal representatives in the event of death or incompetency of any individual Insured under this Policy.

440073 (6/06)                              Page 1 of 8



c) **Claim**

"Claim" shall mean a demand received by the Insured for compensation of damages, including the service of suit or institution of arbitration proceedings against the Insured.

d) **Loss**

"Loss" shall mean a monetary judgment, award or settlement for damages including an award by a court of reasonable attorney's fees and costs to a party making Claim, but does not include fines, penalties or any matter uninsurable under the Law pursuant to which this Policy will be construed, nor the return of fees or charges for the services rendered or to be rendered.

e) **Wrongful Act**

"Wrongful Act" shall mean any actual or alleged error or omission or breach of duty committed or alleged to have been committed or for failure to render such professional services as are customarily rendered in the profession of the Insured as stated in Item 3 of the Declarations.

f) **Claim Expenses**

"Claim Expenses" shall mean (1) fees charged by an attorney designated by the Company and (2) all other fees, costs or expenses incurred in the investigation, adjustment, defense and appeal of a Claim if incurred by the Company or an attorney designated by the Company, or by the Insureds with the written consent of the Company. However, "Claim Expenses" do not include salary charges of regular employees or officers of the Company nor salary or wages of the Insureds, nor any fees, costs, or expenses incurred with respect to any criminal proceedings or actions against an Insured.

## III. CLAIMS MADE EXTENSION CLAUSE

If during the Policy Period, the Insured first becomes aware of any specific and identifiable Wrongful Act and during the Policy Period gives written notice to the Company of:

a) the specific Wrongful Act; and

b) the damage which has or may result from such Wrongful Act; and

c) the circumstances by which the Insured first became aware of such Wrongful Act;

then any Claim that is subsequently made against the Insured arising out of such Wrongful Act shall be deemed for the purposes of this insurance to have been made against the Insured during the Policy Period.

## IV. EXCLUSIONS

This Policy does not apply either directly or indirectly to any Claim and Claim Expenses:

a) Based upon or arising out of any dishonest, criminal, fraudulent, malicious or intentional Wrongful Acts, errors or omissions committed by or at the direction of the Insured.



42

b)   For liability arising out of the Insured's services and/or capacity as:

   1)   an officer, director, partner, trustee, or employee of a business enterprise not named in the Declarations or a charitable organization or pension, welfare, profit sharing, mutual or investment fund or trust;

   2)   a fiduciary under the Employee Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant thereto, or with respect to any employee benefit plan of an Insured.

c)   Made by any business enterprise which is operated, managed or owned, in whole or in part, by the Named Insured or the Named Insured's parent company or any affiliated, subsidiary or associate company.

d)   Arising out of infringement of patent, copyright or trademark.

e)   For bodily injury, sickness, disease or death of any person, or for emotional distress, mental anguish, or other similar injury or damage, or any injury to, or destruction of, any tangible property or loss of use resulting therefrom.

f)   Arising out of false arrest, humiliation, detention or imprisonment, wrongful entry or eviction or other invasion of private occupancy, or malicious prosecution, libel, slander or other defamatory or disparaging material, or a publication or an utterance in violation of an individual's right of privacy.

g)   Based upon or arising out of discrimination with respect to a violation of any municipal, State or Federal Civil Rights law, regulation or ordinance.

h)   Based upon or arising out of a violation or alleged violation of the Securities Act of 1933 as amended, or the Securities Exchange Act of 1934 as amended, or any State Blue Sky or securities law or similar state or Federal statute and any regulation or order issued pursuant to any of the foregoing statutes, unless endorsed hereon.

i)   For the liability of others assumed by the Insured under any oral or written contract or agreement, unless such liability would have attached to the Insured even in the absence of such agreement.

j)   Based upon the Insured's failure to procure or maintain adequate insurance or bonds, or any Claim arising out of the Insured's failure to comply with any law with respect to the Insured's employees concerning Workers' Compensation, Unemployment Insurance, Social Security or Disability Benefits or any similar law.

k)   Based upon the Employee Retirement Income Security Act of 1974 or similar provisions of any Federal, State or local statutory law or common law.

l)   For actual or alleged violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq., and any amendments thereto, or any rules or regulations promulgated thereunder.

m)   Based upon assertions, allegations, causes of action or demands whatsoever by or on behalf of an Insured or Insureds under this Policy against another Insured or Insureds hereunder.

43

n)  Based upon the actual or alleged performance or the failure to perform by the Insureds any professional services as an attorney, or the actual or alleged performance or failure to perform any professional services as an attorney by any person or entity retained or employed by the Insureds.

o)  Due to, based upon or arising out of, directly or indirectly, resulting from or in consequence of, or in any way involving seepage, pollution or contamination of any kind.

## V. WAIVER OF EXCLUSIONS AND CONDITIONS

Whenever coverage under any provision of this Policy would be excluded, suspended or lost:

a)  because of any exclusion relating to dishonest, criminal, fraudulent, malicious or intentional Wrongful Acts or omissions by an Insured and with respect to which any other Insured did not personally participate or personally acquiesce or remain passive after having personal knowledge thereof; or

b)  because of non-compliance with any condition relating to giving of notice to the Company with respect to which any other Insured shall be in default, solely because of the default or concealment of the default by any other Insured responsible for the loss or damage otherwise insured hereunder;

the Company agrees that such insurance as would otherwise be afforded under this Policy shall continue in effect with respect to each and every Insured who did not personally commit or personally acquiesce in or remain passive after having personal knowledge of one or more of the acts or omissions described in any such exclusion or condition; provided that if the condition be one with which such Insured can comply, after receiving knowledge thereof, the Insured entitled to the benefit of this Waiver of Exclusions and Conditions shall comply with such condition promptly after obtaining knowledge of the failure of any other Insured or employee to comply therewith.

## VI. LIMITS OF LIABILITY

a)  **Deductible**
    The Deductible amount stated in the Declarations shall be paid by the Insured and shall apply to each Claim and shall include Claim Expenses.

b)  **Multiple Claims**
    One or more Claims based upon or arising out of the same Wrongful Act or interrelated Wrongful Acts by one or more of the Insureds shall be considered a single Claim.

c)  **Limit of Liability**
    Subject to the foregoing, the Company's total liability for Loss including Claim Expenses resulting from all Claims first made against the Insureds during the Policy Period shall not exceed the amount stated in the Declarations as "Limit of Liability," regardless of the time when such payment is made. The inclusion of more than one Insured hereunder shall not operate to either increase the amount of the applicable Deductible nor the amount of the Company's Limit of Liability. The Limit of Liability shall be excess of the Deductible amount.

A
44

d) **Exhaustion of Limits of Liability**

The Company will not be liable to pay any Loss or Claim Expenses or continue the defense of any Claim, after the Limit of Liability has been exhausted.

e) **Allocation of Claim Expenses**

In the event that any portion of a Claim does not come within the coverage afforded by this Policy, the Company shall be entitled to an allocation of Claim Expenses incurred on behalf of the Insureds based upon the ratio of the number of counts, causes of action or allegations for which coverage is afforded under this Policy as compared to the number of such counts, causes of action or allegations which are not within the scope of coverage. The Company shall not be required or obligated to pay that portion of Claim Expenses allocated to those counts, causes of action, or allegations which are not within the scope of coverage herein.

## VII. TERRITORY

The insurance afforded applies worldwide, provided that suit is brought or Claim is made within the United States, its territories and possessions or Canada.

## VIII. CONDITIONS

a) **Insured's Duties in the Event of Claim, Arbitration or Suit**

1) In the event of any Claim made against the Insured, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured to the individual named in Item 6 of the Declarations as soon as practicable.

2) If the institution of arbitration proceedings or suit is brought against the Insured, the Insured shall immediately forward to the individual named in Item 6 of the Declarations every demand, notice, summons or other process received by the Insured or his representative.

b) **Assistance and Cooperation of the Insured**

The Insured shall cooperate with the Company and its representatives and upon the Company's request shall submit to examination and interrogation by a representative of the Company, under oath if required, and shall attend hearings, depositions and trials and shall assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits, as well as in the giving of a written statement or statements to the Company's representatives and meeting with such representatives for the purpose of investigation and/or defense, all without charge to the Company. The Insured shall further cooperate with the Company and do whatever is necessary to secure and effect any rights of indemnity, contribution or apportionment which the Insured may have. The Insured shall not, except at his own cost, make any payment, admit any liability, settle any Claims, assume any obligation or incur any expense without the written consent of the Company.


45

c) **Settlement of Claim**

The Company shall not settle any Claim without the consent of the Insured. If, however, the Insured shall refuse to consent to any settlement recommended by the Company and shall elect to contest the Claim or continue any legal proceedings in connection with such Claim, then the Company's liability for the Claim shall not exceed the amount for which the Claim could have been so settled plus Claim Expenses incurred up to the date of such refusal. Such amounts are subject to the provisions of Clause VI, Limits of Liability.

d) **Audit**

The Company may examine and audit the Insured's books and records at any time during the Policy Period and after the final termination of this Policy, as far as they relate to the subject matter of this Policy.

e) **Subrogation**

In the event of any Claim or payment under this insurance, the Company shall be subrogated to the extent of such payment to all rights of recovery therefor, and the Insureds shall execute all papers required and shall do everything that may be necessary to secure such rights, including the execution of such documents necessary to enable the Company to effectively bring suit in the name of the Insureds. The Insureds shall do nothing after Claim is made against them to prejudice such rights. Any recovery shall first be paid to the Company to the extent of any Loss or Claim Expenses paid by the Company, with the balance paid to the Insured. However, no subrogation shall be had against any Insured unless such Insured is excluded from coverage by reason of Exclusion IV (a).

f) **Other Insurance**

This Policy shall be excess insurance over any other valid and collectable insurance available to the Insured whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as a specific excess insurance over the Limit of Liability provided in this Policy.

g) **Cancellation**

This Policy may be cancelled by the Named Insured by surrender thereof to the Company or by mailing written notice stating when thereafter such cancellation shall be effective. If cancelled by the Insured, the Company shall retain the customary short rate proportion of the earned premium. This Policy may also be cancelled, with or without the return by tender of the unearned premium, by or on behalf of the Company by delivering to the Named Insured at the address set forth in the Declarations or by sending to the Named Insured by mail, registered or unregistered, at the address in the Declarations not less than thirty (30) days (or ten (10) days in the event of non-payment of premium) written notice stating when the cancellation shall be effective. If cancelled by the Company, the Company shall retain the pro rata portion of the earned premium. For the purpose of this Policy, notice of cancellation given to the Named Insured by the Company or given to the Company by the Named Insured pursuant to this paragraph shall be deemed to be notice on behalf of all Insureds hereunder.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction hereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

A
46

h) **Extension of Policy Period**

In the event of cancellation or non-renewal of this Policy in its entirety by the Company, this Policy may be extended for the additional period as indicated in Item 11 of the Declarations, for a premium based upon the percentage as indicated in Item 12 of the Declarations of the total premium, for Claims first made against the Insured during the said extension period provided:

1) The Wrongful Act giving rise to such Claim is committed or alleged to have been committed prior to the effective date of the cancellation or the original expiration date, whichever is applicable, and which would be otherwise insured by this Policy; and

2) Written notice of the exercise of this option is given by the Named Insured in Item 1 of the Declarations to the Company within ten (10) days after the effective date of cancellation or non-renewal; and

3) Such additional period shall be deemed part of the expiring Policy Period and not an addition thereto; and

4) For purposes of such additional period, coverage shall be applicable only with respect to Claims first made against the Insureds during such additional period. The provisions of Clause III of this Policy shall not be applicable to such additional period.

The quotation of a renewal premium higher than the expiring premium or a change in other terms or conditions shall not be deemed to be a cancellation or non-renewal by the Company.

i) **Action Against the Company**

No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this Policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.

Any person or organization.or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by this Policy. No person or organization shall have any right under this Policy to join the Company as a party to any action against the Insured to determine the Insured's liability, nor shall the Company be impleaded by the Insured or his legal representative. Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve the Company of any of its obligations hereunder.

j) **Assignment**

No assignment of interest under this Policy shall bind the Company unless its prior written consent is endorsed hereon.

k) **Changes**

Notice to or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this Policy, nor estop the Company from asserting any rights under the terms of this Policy. The terms of this Policy shall not be waived or changed, except by endorsement issued to form a part of this Policy, signed by an authorized representative of the Company.



l) **Application**
   By acceptance of this Policy, the Insureds agree that the statements in the application are personal representations, that they shall be deemed material and that this Policy is issued in reliance upon the truth of such representations and that this Policy embodies all agreements existing between the Insureds and the Company or any of their agents relating to this insurance.

m) **False or Fraudulent Claims**
   If any Insured shall commit fraud in proffering any Claim as regards amount or otherwise, this insurance shall become void as to such Insured from the date such fraudulent Claim is proffered.

A
48

*Endorsement #12 & #22*
*Retro date to 1.1.97 & add of retro dates*
*for Whitehill*

From: Christina Urquhart <curquhart@crestonerisk.com>
Subject: **Endorsement ~ E&O Policy**
Date: July 23, 2008 10:44:53 AM CDT
To: Bob Wright <bwright@skywiresoftware.com>
1 Attachment, 34.5 KB

skywire eo c...pdf (34.5 KB)

skywire eo c...pdf (34.5 KB)

Bob,

Attached please find endorsements #12 & #22 to your E&O policy for the current term, correcting the retro date for Docucorp, Newbridge & Matrix from 9.24.04 to 1.1.97 as well as adding the correct retro date of 2.20.04 for the first $2M limit layer and 8.31.07 for the $3M excess layer for Whitehill.

These are for your records.

Please let me know if you have any questions, see any discrepancies, or need anything further.

Thanks!

**Christina Urquhart**
Director of Marketing & Operations

**Crestone Risk Management**
10210 N. Central Expressway
Suite 500
Dallas, Texas  75231

214.647.5064 Direct
214.853.5920 Fax
curquhart@crestonerisk.com

A
49

# *Endorsement*

NAMED INSURED:  SKYWIRE HOLDINGS, LLC

### NAMED INSURED AMENDMENT ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that Item 1. of the Declarations Page, Named Insured, is amended to include the following:

| | Retroactive Date: |
|---|---|
| Skywire Software, LLC | 6/19/01 |
| Docucorp International, Inc. | 1/01/97 |
| Newbridge Information Services | 1/01/97 |
| Matrix Digital Technologies | 1/01/97 |

All other terms and conditions remain unchanged.

Endorsement effective   2/23/08      HMP Policy No. S708-10104

## REVISED

Endorsement No.   12

Professional Indemnity Agency, Inc.

by _____
    (Authorized Representative)

HMP E-31
E31

A
50

# *Endorsement*

*End. Correcting retro date to 1.1.97*

NAMED INSURED: SKYWIRE HOLDINGS, LLC

<u>NAMED INSURED AMENDMENT ENDORSEMENT</u>

In consideration of the premium charged, it is hereby understood and agreed that Item 1. of the Declarations Page, Named Insured, is amended to include the following:

| | Retroactive Date: |
|---|---|
| Skywire Software, LLC | 6/19/01 |
| Docucorp International, Inc. | 1/01/97 |
| Newbridge Information Services | 1/01/97 |
| Matrix Digital Technologies | 1/01/97 |
| Whitehill Technologies | |

All other terms and conditions remain unchanged.

Endorsement effective  2/23/08    HMP Policy No. S708-10104

Endorsement No.  12

Professional Indemnity Agency, Inc.


by_____
    (Authorized Representative)

HMP E-31
E31             **REVISED**

A
51

# *Endorsement*

NAMED INSURED:  SKYWIRE HOLDINGS, LLC

In consideration of the premium charged, it is hereby understood
and agreed that Item 1. of the Declarations Page, Named Insured, is
amended to  include the following:

Whitehill Technologies

it is further understood and agreed that a Retroactive Date of
02/20/04 shall apply to the $2,000,000 limit layer.

It is furhther understood and agreed that a Retroactive Date of
08/31/07 in lieu of 02/23/07 shall apply to the $3,000,000 excess
of the primarty $2,000,000 limit layer.

All other terms and conditions remain unchanged.

Endorsement effective:  2/23/08        Policy No.: S708-10104

Endorsement No.:   22

                    Professional Indemnity Agency, Inc.

            by _____
                    (Authorized Representative)

HMP E-103

A
52

**EXHIBIT B**

# FISH & RICHARDSON P.C.

1717 MAIN STREET
SUITE 5000
DALLAS, TEXAS
75201

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

Telephone
214 747-5070

<u>VIA HAND DELIVER AND CERTIFIED MAIL</u>

Facsimile
214 747-2091

June 20, 2008

Web Site
www.fr.com

Patrick Brandt
Skywire Software, LLC
2401 Internet Blvd., Suite 2001
Frisco, TX 75034

Steven H. Stodghill
214 292-4040

Email
stodghill@fr.com

Re:     SYSTEM DEVELOPMENT AND LICENSE AGREEMENT



ATLANTA

AUSTIN

BOSTON

DALLAS

DELAWARE

MUNICH

NEW YORK

SAN DIEGO

SILICON VALLEY

TWIN CITIES

WASHINGTON, DC

Dear Mr. Brandt:

This firm represents U.S. Risk Insurance Group, Inc. ("USR") and Gresham & Associates, Inc. ("Gresham") in litigation matters. This letter is sent pursuant to Paragraph 14 of the "SYSTEM DEVELOPMENT AND LICENSE AGREEMENT" ("Agreement") between USR, Gresham and Skywire, LLC ("Skywire") dated November 24, 2003. I write to put Skywire on notice of USR and Gresham's demands. As set forth below, USR and Gresham have numerous claims against Skywire, including but not limited to, negligent misrepresentation, breach of contract, and breach of warranty. If USR and Gresham's demands are not satisfied, USR and Gresham will institute legal proceedings seeking all actual and consequential damages, which we estimate to exceed $5 million.

In order to induce USR and Gresham to sign the Agreement, Skywire represented that it was an expert in the field of software development for the insurance industry, would use its best commercial efforts to design an "Agency Management System" ("AMS"), and lead USR and Gresham to believe it had the necessary expertise to perform. Skywire knew the AMS software system, and its ability to integrate with USR and Gresham's accounting, policy issuance and rating programs was critical for the success of USR and Gresham. Pursuant to the Agreement, Skywire agreed to fully design and develop the ASM software system. The Agreement further provided that the AMS software would be commercially marketable and that Skywire would pay USR and Gresham royalties based upon the licenses issued. Based on the terms and conditions of the Agreement, USR and Gresham signed the Agreement and provided Skywire at least $1 million.

In January, 2008, Skywire informed USR and Gresham that it had decided to "sunset" further AMS software development, offered to mutually terminate the Agreement and license the defective AMS software to our clients. Such a decision, coupled with such unacceptable offers provided USR and Gresham absolutely no solution to USR and Gresham's ongoing problems. After more than four years in development and implementation, Skywire has failed to deliver the promised software under the terms

B
53

Patrick Brandt
June 20, 2008
Page 2

of the Agreement. In addition, (i) discovery of serious technical issues, and (2) Skywire's decision to cease further development of AMS, declare the software not commercially viable, and to stop supporting the software, has left USR and Gresham in a position of being without a sustainable, robust or efficient agency management system and caused significant financial harm.

Rather then list of each and every defect, flaw, and problem with the AMS software here (and waste numerous pages) that has and continues to damage USR and Gresham's business, we will limit this letter to the following clear and undisputable breaches of the Agreement.

       1.    Section 7, Maintenance: ... **after Final Written Acceptance and after the New AMS Software has been fully implemented and live at US Risk and Gresham for a period of 45 calendar days, Skywire shall immediately begin the design and development of the necessary enhancements to the New AMS Software to integrate the finished system with US Risk's and Gresham's rating and policy issuance systems."**

USR and Gresham demand that Skywire provide the "necessary enhancement" design services required in Paragraph 7 of the Agreement or pay USR and Gresham's damages. Despite the Agreement's specific design requirements in Paragraph 7, Skywire has failed to integrate the new AMS Software with USR and Gresham's rating and policy issuance systems. Such integration was necessary for USR and Gresham to operate at levels of efficiency comparable (or better) to its competitors, and to make the AMS software commercially marketable. USR and Gresham demand specific performance of the required necessary integration enhancements or, in the alternative, the payment of all actual and consequential damages for breach of contract.

       2.    Section 8, WARRANTIES, Paragraph 8.4: **Skywire warrants and represents that it shall repair any and all reported defects or bugs in the New AMS Software pursuant to Skywire's standard maintenance terms.**

USR and Gresham have demanded, and continue to demand, that Skywire fix the long list of defects and bugs discovered in the AMS software and previously reported to Skywire. Skywire has failed to fix most of them despite the release of it latest and final version of the AMS software. Again, while details could take up many pages, a few indisputable examples include (a) the failure to create an automated process to check the "health" of the AMS on a daily basis, (b) failure to provide regression testing of the AMS software, (c) failure to implement transactional boundaries in the AMS Software for operations that are not within a transactional scope, and (d) failure to fix a myriad of defects identified in USR and Gresham's accounting reports.

B
54

Patrick Brandt
June 20, 2008
Page 3

     3.     8, WARRANTIES, Paragraph 8.5: Skywire warrants and represents that the New AMS Software ... performs at acceptable performance levels for USR and Gresham based on the minimum standards, without limitation, as described in Exhibit F for servers, workstations, Local Network, and Internet Connectivity.

Exhibit F to the Agreement is quite clear, and speaks for itself. The minimum performance standards have not been met. The AMS is incapable of processing transactions anywhere close to 10 transactions per 5 second interval. For example, the transaction speed was so slow that USR was forced to purchase a separate server just for its accounting department, and even then, the performance did not improve significantly for any division of USR. The performance failures of the AMS software have slowed USR and Gresham's accounting and policy processing systems to a snail's pace, causing countless delays, heightened levels of frustration and loss of morale within USR and Gresham.

Simply put, the AMS software is fatally flawed at its foundation, so much so that Skywire itself decided to cease further development and not attempt to market it commercially. The failures of Skywire to develop, and later to cease development, of the AMS software in a reasonably and prudent manner has frustrated USR and Gresham's efforts to obtain and utilize a commercially acceptable agency management system, as well as depriving USR and Gresham of any ability recoup their investments and earn royalties.

As required in Paragraph 10 of the Agreement, please communicate with the undersigned, and formulate an acceptable resolution of this matter. I hope that I have made abundantly clear the seriousness of Skywire's actions and the consequences that will befall Skywire in the event that it does not timely respond and resolve these demands. Failing Skywire's complete fulfillment of the demands outlined above, I have been instructed to institute legal proceedings seeking all actual and consequential damages and all other available relief, including the payment of attorneys fees and costs.

                       Sincerely,

                       Steven H. Stodghill

B
55